**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **HASIBA SAMADI** | **CIVIL ACTION NO. 25-1889** |
| | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **WARDEN RICHWOOD CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Petitioner Hasiba Samadi,[1] a detainee at Richwood Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") who proceeds pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 16]. For reasons that follow, the Court should grant Petitioner's request for release from custody.

## Background

Petitioner, a citizen of Afghanistan, was taken into immigration custody on December 15, 2024. [doc. #s 1, p. 4; 1-3, p. 68]. On May 9, 2025, an immigration judge ordered her removed from the United States of America but granted her withholding of removal to Afghanistan. [doc. #s 1, pp. 4, 6; 1-3, pp. 3-5]. Petitioner did not appeal to the Board of Immigration Appeals.

Petitioner filed this proceeding on November 17, 2025. [doc. # 1, p. 8]. She first claims: "Since I cannot be removed, my continued detention has no valid purpose and has become

---

[1] Petitioner's "A-Number" is 221-387-077.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

indefinite and punitive." *Id.* at 6.  Next, citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), she

claims: "I have been detained by ICE since December 15, 2024. . . . My detention has now

[lasted] almost 11 months total and more than 6 months since withholding was granted." *Id.*

She adds, "there is no safe country designated in my removal order that I can be removed to at

this time" and "there is no other safe country that has agreed to accept me." [doc.  #1-3, p. 68].

She has "not been informed of any travel documents, flight arrangements, or concrete plans for

[her] removal to any other country." *Id.* "Based on everything [she has] seen and been told, [her]

removal is not reasonably foreseeable in the near future." *Id.*  She states further that she has fully

cooperated with the Government in the removal process. *Id.*  ICE has allegedly repeatedly

ignored her requests for release without providing any meaningful explanation. *Id.* at 70.

Petitioner also claims that ICE is failing to provide "proper" medical care.  [doc. # 1, p.

6].  Finally, she claims: "Continuing to detain me despite [withholding of removal] protection is

arbitrary and violates the humanitarian principles of U.S. immigration law and treaty

obligations." *Id.* at 7.

Petitioner seeks immediate release from custody.  [doc. # 1, p. 7].

Relevant to Petitioner's *Zadvydas* claim, Respondents state: "On June 15, and 17, ICE

sent requests for acceptance of Petitioner to the Consulates of Colombia and Canada.  No

response was received. . . . ICE is attempting to identify a third country which will accept the

petitioner.  ICE has not yet obtained any travel documents for the petitioner because a third

country for removal has not yet been identified." [doc. # 16, p. 3].

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney

General shall remove the alien from the United States within a period of 90 days (in this section

referred to as the 'removal period')."  Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, she has been detained 274 days (or 9 months, 1 day), following her final order of removal.  In addition, she meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.  For 274 days, the Government has been unable to obtain a travel document for her despite multiple attempts and despite her full cooperation.

Respondents do not rebut Petitioner's showing.  They do not present any evidence to rebut Petitioner's arguments that she has fully cooperated in the removal process, that there is no safe country to which she can be removed, that there is no other safe country that has agreed to accept her, and that she has "not been informed of any travel documents, flight arrangements, or concrete plans for [her] removal to any other country" despite repeated requests for any and all information.  Respondents do not provide any evidence indicating that travel documents are forthcoming, that ICE has made meaningful progress in effectuating Petitioner's removal, or that Petitioner has not fully cooperated with ICE.

Respondents state: "On June 15, and 17, ICE sent requests for acceptance of Petitioner to the Consulates of Colombia and Canada.  No response was received. . . . ICE is attempting to identify a third country which will accept the petitioner.  ICE has not yet obtained any travel documents for the petitioner because a third country for removal has not yet been identified." [doc. # 16, p. 3].  From this, Respondents unpersuasively conclude that Petitioner's removal is significantly likely.

That Respondents submitted two requests "for acceptance" to two countries' consulates which to date remain unanswered does not establish that removal is significantly likely to occur in the reasonably foreseeable future.  Travel document requests (to the extent these requests for

acceptance constitute requests for travel documents) can, for instance, be denied, ignored, or processed in the distant future (as opposed to the 'reasonably foreseeable future').  Further, that Respondents have not obtained a travel document following these requests submitted almost nine months ago suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.  There is no evidence that Canadian or Colombian officials have even received or reviewed the requests.  Respondents essentially present requests for acceptance followed by no indication of progress in almost nine months along with no indication that progress will occur.  The longer a request for travel documents remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *See Zadvydas*, 533 U.S. at 701.

Courts in this District have held that the government's burden to furnish evidence demonstrating that removal is significantly likely in the reasonably foreseeable future is not met by a pending request for travel documents alone.  *See, e.g., Johnson v. Young*, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013), *report and recommendation adopted,* 2013 WL 1571272 (W.D. La. Apr. 12, 2013) (finding the argument that the Jamaican consulate had not yet refused to issue travel documents insufficient to meet the government's burden); *Fermine v. Dir. of Immigr. & Customs Enf't*, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007); (finding no significant likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document and Trinidad had not yet refused the request).

Respondents contend: "This Petition should be dismissed, like the petitions in *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1365 (N.D. Ga. 2022) and *Nagib v. Gonzales*, 2006 WL 1499682 at p. 2.  In both cases, courts found that the aliens had not met their burdens because the only evidence of a good reason to believe there was no significant likelihood of a reasonably

foreseeable removal was the time in detention and the assertion that the receiving country had not yet issued travel documents." [doc. # 16, p. 6]. The undersigned expresses no agreement or disagreement with the disposition of those cases, but it suffices that they are materially distinguishable. In *Fahim*, unlike here, the Government " sent an emergency travel document request to the Egyptian Embassy[,]" it flew "petitioner to the Egyptian Embassy . . . for an interview to try to move along the process" three months before he filed his habeas corpus petition, and the petitioner also had a "passport that would facilitate his return to Egypt" which he failed to produce. *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1362 (N.D. Ga. 2002). In *Nagib*, ICE had "formally requested travel documents" from the Sudanese Embassy, the embassy later advised a deportation officer that his travel document request was still pending, and the Sudanese government had in the past issued travel documents to Sudanese citizens. *Nagib v. Gonzales*, 2006 WL 1499682, at *2 (N.D. Tex. May 31, 2006).

Respondents argue that they have no travel documents for Petitioner because "the processes for obtaining a temporary travel document from another country . . . include considerations of diplomacy that are beyond the control of ICE." [doc. # 16, p. 5]. Citing *Zadvydas*, Respondents also argue, "If it is established at any stage of a custody review that, in the judgment of the Service, travel documents can be obtained, or such document is forthcoming, the alien will not be released . . . ." [doc. # 16, p. 7]. Respondents, however, never state that "it *is* the judgment" of ICE that travel documents can be obtained or are forthcoming. Rather, as above, they suggest that obtaining travel documents is beyond their control.

Tellingly, Respondents have not even *identified* a third country to which they intend to remove Petitioner, much less made any efforts at securing a travel document. Yet, they still

6

detain her. While not dispositive, the undersigned finds it persuasive that Petitioner has endured 449 days of total detention (or 1 year, 2 months, and 22 days).

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[4] They do not, for example, provide any evidence that they have made progress in obtaining travel documents, that they have been communicating with any country (aside from Canda and Colombia, as evaluated above) about Petitioner's deportation, that any country has recently accepted other deportees similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[5, 6]

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence.  "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future."  *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).  As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future."  *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible.  *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

---

that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal.  While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

[7] The undersigned finds no need to address any claim or request for relief not addressed herein.

**<u>Conclusion</u>**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Hasiba Samadi's petition for habeas corpus be **GRANTED**: Respondents, including the Warden of Richwood Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision to be established by an ICE deportation officer if necessary and (B) notify Petitioner's counsel of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.[9]  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

---

[8] In other words, it is the intent of the Court that Petitioner should not be released only to be immediately taken back into custody.  The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

[9] Respondents have preemptively waived their objections to this Report and Recommendation.

**legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 9th day of March, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge